ARBON VALLEY SOLAR, LLC.,
INTERCONNECT SOLAR
DEVELOPMENT, LLC., and JOHN
HESS CONSTRUCTIONS, INC.,
        Plaintiffs,

      v.

THOMAS & BETTS CORPORATION,
a Tennessee Corporation, and John and
Jane Does I through, whose true
identities are unknown,
        Defendants.

Case No. 1:16-CV-0070-EJL-REB

**MEMORANDUM DECISION AND
ORDER**

      This matter is before the Court on a Motion to Dismiss (Dkt. 11) filed by

Defendant Thomas & Betts Corporation.  Having fully reviewed the record, the

Court finds that the facts and legal arguments are adequately presented in the briefs

and record.  Accordingly, in the interest of avoiding further delay, and because the

Court conclusively finds the decisional process would not be significantly aided by

oral argument, this matter shall be decided on the record before this Court without

oral argument.

# I.    BACKGROUND[1]

Plaintiffs Arbon Valley Solar, LLC ("Arbon Valley Solar") and Interconnect Solar Development LLC ("Interconnect Solar") (referred to collectively hereinafter as "Plaintiffs") bring claims for breach of contract and breach of the implied covenant of good faith and fair dealing, negligence, breach of assumed duty, and negligent hiring, supervision and training, against Defendant Thomas & Betts Corporation ("Thomas & Betts" or "Defendant").  Plaintiffs' claims arise out of the construction of a solar power facility in Idaho ("Solar Project").  Arbon Valley Solar is an affiliate of Cranney Farms, a business enterprise engaged in agricultural operations carried out in the Arbon Valley, Idaho.

On or about December 3, 2012, Arbon Valley Solar entered into an agreement ("Construction Agreement") with Interconnect Solar, under which Interconnect Solar agreed to provide all labor, materials, equipment and services necessary to complete the Solar Project on behalf of Arbon Valley Solar.  The Solar Project was designed to charge five irrigation pivots and two irrigation wells, which would then serve the agricultural operations of Cranney Farms by way of a lease agreement between it and Arbon Valley Solar.  Before entering into the

---

[1] Unless otherwise noted, all facts are taken from Plaintiffs' Amended Complaint (Dkt. 10).  The Court must accept as true all of the factual allegations contained in a complaint when deciding a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Construction Agreement, Interconnect Solar contacted Thomas & Betts to seek comment and feedback on the viability of the Construction Agreement, as well as general contract oversight and project management with respect to the Solar Project.

In contacting Thomas & Betts, Interconnect Solar primarily communicated and dealt with Sammy Germany, Thomas &Betts', "Market Development Manager of Renewable Energy and Power Generation for the United States and Latin America." Mr. Germany's business card identified him with the aforementioned title, and also stated Mr. Germany held a PhD/MBA. Mr. Germany reviewed the Construction Agreement between Arbon Valley Solar and Interconnect Solar. After reviewing and confirming the viability of the Construction Agreement, Mr. Germany agreed to provide contractual oversight, project management, and engineer procurement for the Solar Project.

In consideration of such services, Plaintiffs tendered $50,000.00 in care of Mr. Germany, who represented the sum would be deposited into an escrow account maintained by Sunjoy Power, LLC ("Sunjoy Power"), a subsidiary of Thomas & Betts. Thereafter, Mr. Germany began providing contractual oversight and project management for the Solar Project. Mr. Germany procured engineering services by retaining Eric R. Hepburn, a professional engineer with Hepburn and Sons, LLC ("Hepburn and Sons"), for the purpose of completing the necessary engineering

plans and drawings for the Solar Project. Mr. Germany paid an invoice amount of $7,500.00 to Hepburn and Sons from the $50,000.00 tendered by Plaintiffs to Sunjoy Power in care of Mr. Germany.

On March 5, 2013, while conducting contractual oversight, project management, and other duties, Mr. Germany executed an agreement ("Confidentiality Agreement") with Dynapower Company LLC ("Dynapower") on behalf of Sunjoy Power. Plaintiffs suggest the Confidentiality Agreement was entered into for the purpose of facilitating the completion of the Solar Project.[2] On March 21, 2013, based upon Mr. Germany's review and recommendation, Interconnect Solar purchased four 100 kilowatt Micro Power System Inverters, for a total purchase price of $240,000.00, from Dynapower. The products were delivered in July or August of 2013. Interconnect Solar also purchased

---

[2] Plaintiffs referenced the Confidentiality Agreement in their Amended Complaint but did not attach the Confidentiality Agreement. (Dkt. 10, ¶¶ 28-30.) Thomas & Betts submitted a copy of the Confidentiality Agreement in conjunction with its Reply brief. (Dkt. 19-1.) "In deciding a motion to dismiss for failure to state a claim, the court generally should not consider materials outside the complaint and pleadings. However, the court may consider attachments to the complaint and any document referred to in (even if not originally appended to) the complaint, when the authenticity of such a document is not in question." *Brown v. Miller Brewing Co.*, 2014 WL 201699, *3 (Idaho, 2014) (citing *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997)); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the court may examine documents referred to in a complaint, although not attached thereto, without transferring a motion to dismiss into a motion for summary judgment.)

$100,000.00 of equipment and other products for the Solar Project from another company, Wesco, based on the recommendation of Mr. Germany.

In April 2013, Randy Vigos, another employee of Thomas & Betts, traveled to Boise, Idaho, to meet with Interconnect Solar, Mr. Germany, and others. Plaintiffs suggest the meeting with Mr. Vigos concerned Defendant's project management, contractual oversight and engineer procurement duties in relation to the Solar Project which were being performed by Mr. Germany. During the aforementioned meeting, Mr. Vigos introduced himself as a manager for Thomas & Betts and presented a business card to Interconnect Solar which identified him as "Product Specification Specialist Pacific N.W. Region Electrical Division Masters Award." Both Mr. Vigos and Mr. Germany stated Mr. Vigos was the representative of Thomas & Betts who would be able to assist with the Solar Project in the event Mr. Germany was not available.

Following the meeting in Boise, Mr. Vigos transmitted an e-mail through his account with Thomas & Betts to thank Bill Piske of Interconnect Solar for the meeting and opportunity. Plaintiffs note the e-mail was also sent to Thomas & Betts' top level executives, and contend the e-mail thus ratified the authority Thomas & Betts delegated to Mr. Germany to provide project management, construction oversight, and engineer procurement in relation to the Solar Project.

In or about July 2013, Interconnect Solar suspected that Mr. Germany had improperly used the professional engineer stamp of Richard D. Hepburn with respect to the Solar Project. Interconnect Solar confronted Mr. Germany about the authenticity of the engineering drawings and was assured by Mr. Germany that all matters were "above board." (Dkt. 10, ¶ 39.) However, on or about December 11, 2013, an engineer with Dynapower performed an initial assessment of the Solar Project on behalf of Plaintiffs and concluded many deficiencies existed which rendered the Solar Project incompatible with the operations of Arbon Valley Solar and Cranney Farms. Moreover, on January 13, 2014, an attorney for Hepburn and Sons sent a demand letter to Mr. Germany stating: "Our investigation demonstrates that you and [SunJoy Power] have purposefully and with intent to deceive affixed Mr. Hepburn's professional engineer stamp issued by the Commonwealth of Massachusetts to multiple drawings which you submitted to [Interconnect Solar] for use on the [Solar Project]." (Dkt. 10, Ex. C.)

Plaintiffs thereafter learned that assembling, building and fabricating the Solar Project in reliance upon the faulty engineering plans procured by Mr. Germany rendered all of the labor, material, equipment and services involved in the Solar Project incompatible and obsolete. Plaintiffs maintain they have suffered in excess of $5,000,000.00 in losses as a direct and proximate cause of Defendant's actions.

Plaintiffs filed their Complaint and Demand for Jury Trial in Oneida County, Idaho, district court on January 13, 2016. (Dkt. 1-3.) On February 12, 2016, Thomas & Betts removed the matter to this Court on the basis of diversity jurisdiction. (Dkt. 1.) On March 16, 2016, Thomas & Betts moved to dismiss Plaintiffs' Complaint and Demand for Jury Trial pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 5.) Plaintiffs responded by filing an Amended Complaint on April 6, 2016.[3] (Dkt. 10.) Thomas & Betts then filed the instant Motion to Dismiss the Amended Complaint (Dkt. 11.) Although both the initial and Amended Complaint included John Hess Construction, Inc. as a plaintiff, the parties have since stipulated to, and the Court has approved, dismissal of the claims of John Hess Construction, Inc. (Dkt. 16; Dkt. 17.)

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[3] Plaintiffs' Amended Complaint renders Defendant's initial Motion to Dismiss (Dkt. 5) moot.

555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but does require more than a sheer possibility that a defendant acted unlawfully. *Id*.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly*. First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept legal conclusions as true. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In light of *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing standard as follows: "In sum, for a complaint to survive a motion to

dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## III. ANALYSIS

Thomas & Betts argues the claims asserted in Plaintiffs' Amended Complaint should be dismissed because Plaintiffs fail to allege any relationship between the parties that would give rise to any contractual obligation or other duties that would support Plaintiffs' claims. Thomas & Betts argues Plaintiffs fail to allege any facts that indicate Mr. Germany had express, implied or apparent authority that would allow him to provide construction oversight services on its behalf. In the absence of any allegations of an agency relationship between Mr. Germany and Thomas & Betts, Thomas & Betts suggests Plaintiffs' negligence claims must also be dismissed. Thomas & Betts maintains Plaintiffs have not alleged it had any duty to Plaintiffs, and have not alleged any facts to show Mr. Germany's actions were reasonably foreseeable to Thomas & Betts. Thomas &

Betts also seeks dismissal of Plaintiffs' negligence claims on the basis of the economic loss rule.

## A. Contract Claims

Plaintiffs' first claim is for breach of contract and breach of the implied covenant of good faith and fair dealing. The elements of a claim for breach of contract are: (1) the existence of a contract; (2) breach; (3) causation; and (4) damages. *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013). The implied covenant of good faith and fair dealing "is a covenant implied by law in the parties' contract. No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties." *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 863 (Idaho 1991) (citations omitted). A violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract. *Sorensen v. Comm Tek, Inc.*, 799 P.2d 70, 75 (Idaho 1990). Plaintiffs allege a valid and binding contract was entered into by and between Plaintiffs and Thomas & Betts, that "Defendant materially breached the contract in several respects," and that "Defendant… likewise breached the covenant of good faith and fair dealing implied in the valid contract entered into by and between the parties." (Dkt. 10, ¶ 49.) Plaintiffs do not specify whether the agreement Defendant allegedly entered into (through Mr. Germany) was written or oral.

In its Motion to Dismiss, Thomas & Betts argues Plaintiffs' Amended Complaint fails to allege either the existence of a contract between Plaintiffs and Defendant or entry of a contract between Plaintiffs and Defendant's authorized agent. Thomas & Betts claims the Amended Complaint is focused entirely on the actions of a non-party, Mr. Germany. Thomas & Betts suggests Mr. Germany acted "largely unilaterally and in an area in which [Defendant] does not do business," and that Plaintiffs have not alleged facts to establish Mr. Germany had the authority of Thomas & Betts when he agreed to provide construction management services for Plaintiffs. (Dkt. 11-1, p. 2.)

There are three separate types of agency, any one of which is sufficient to bind the principal to a contract entered into with a third party, provided the agent has acted within the course and scope of the authority granted by the principal.[4] *Clark v. Gneiting*, 501 P.2d 278 (Idaho 1972)*; American West Enter., Inc. v. CNH, LLC*, 316 P.3d 662, 669 (Idaho 2013). The three types of agency are: (1) express authority (a form of agency commonly referred to as actual authority); (2) implied authority (also referred to as actual authority); and (3) apparent authority. *Id.*; *see also Hieb v. Minn. Farmers Union*, 672 P.2d 572, 575 (Idaho 1983).

---

[4] However, a principal "may be bound by even unauthorized acts of his agent if subsequent to such acts he voluntarily and knowingly ratifies what has been done even though the principal does not actually receive the full consideration to which he is entitled under the terms of the contract." *Clark*, 501 P.2d at 280.

"Express authority" refers to the authority a principal has explicitly granted the agent to act in the principal's name. *American West*, 316 P.3d at 669. "Implied authority refers to that authority which is necessary, usual, and proper to accomplish or perform the express authority delegated to the agent by the principal." *Id.* (quoting *Bailey v. Ness*, 708 P.2d 900, 902-03 (Idaho 1985)). Finally, apparent authority "is created when the principal voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority." *Id.* Although the existence of an agency relationship is a question of fact, the party claiming an agency relationship existed must still adequately plead the grounds upon which an allegation of authority rests. *Id.* at 670 (finding plaintiff did not raise facts sufficient to demonstrate an agency relationship on summary judgment); *see also Moto Tech, LLC v. KTM North America, Inc.*, 2014 WL 4793904, at *5 (D. Idaho 2014); *Humphries v. Becker*, 366 P.3d 1088, 1096 (Idaho 2016).

Plaintiffs claim they have adequately plead factual allegations to establish Mr. Germany had both actual and apparent authority to bind his employer, Thomas & Betts, to provide contractual oversight, project management, and engineer procurement in relation to the Solar Project. Plaintiffs first suggest Mr. Germany had actual and apparent authority to so bind Defendant because Mr. Germany was

a management level employee, as established by his business card identifying Mr. Germany as Thomas & Betts' "Market Development Manager of Renewable Energy and Power General for the United States and Latin America." (Dkt. 14, p. 13.)

Plaintiffs contend Mr. Germany's business card "disclosed and communicated to third-parties who received it that Mr. Germany operated as [a] high level manager for [Defendant] with the management level authority over business operations conducted in the United States and Latin America and advertised his apparent authority to bind Defendant Thomas & Betts Corporation to contracts entered into with third-parties." (Dkt. 10, ¶ 18.) The Court disagrees. Mr. Germany's title provides no indication that he was a contracting officer for Thomas & Betts, and instead simply illustrates Mr. Germany was an employee of the company. An employee can have the title of "Manager" without having contracting authority, just as an employee without this title may have authority to contract with third parties on behalf of a company. Moreover, there are no allegations of any acts or statements by Thomas & Betts indicating that it was involved in any type of construction oversight management as part of its business. In the absence of any allegations connecting Defendant's business with the services Mr. Germany agreed to provide, the Court cannot find Mr. Germany had

actual or apparent authority to bind Thomas & Betts to a construction management contract.

Plaintiffs also suggest the fact Thomas & Betts "identified Mr. Germany on its published website(s)," expressed the authority Defendant delegated to Mr. Germany.  (Dkt. 10, ¶ 23.)  Plaintiffs do not specify how Mr. Germany was identified on Thomas & Betts' websites.  That Mr. Germany was somehow referenced on his company's website does not provide any information regarding Mr. Germany's authority to bind Thomas & Betts to contracts with third parties.

Plaintiffs next claim Mr. Germany had actual or apparent authority because Thomas & Betts issued Mr. Germany company-owned equipment and tools, such as computers, email addresses, and telephones, which were used by Mr. Germany in conjunction with the Solar Project.  (Dkt. 14, p. 14.)  As Thomas & Betts notes, even the lowest level employee of a modern corporation could have access to a company computer, telephone and email address.  (Dkt. 15, p. 7.)  The fact Mr. Germany used Defendant's equipment and technology does not indicate he had any authority to bind Thomas & Betts to contracts with third parties.

Plaintiffs also suggest Mr. Germany had actual authority because he drafted and signed a Confidentiality Agreement on behalf of Defendant which facilitated the exchange of trade secrets and other proprietary information in a protected manner by and between other parties involved in the Solar Project.  (Dkt. 14, p.

14.)  However, the Confidentiality Agreement at issue was between Sunjoy Power, Mr. Germany's affiliate, and Dynapower.  (Dkt. 19-1, p. 2.)  The Confidentiality Agreement does not establish that Mr. Germany had authority to bind Thomas & Betts because the contracting party was Sunjoy Power, not Thomas & Betts. Plaintiffs do not provide any detail as to the purported relationship between Sunjoy Power and Thomas & Betts.  The Court cannot infer Thomas & Betts was aware of, or authorized, the Confidentiality Agreement in the absence of such information.

Plaintiffs also claim Mr. Germany had agency authority because Plaintiffs tendered $50,000.00 to Thomas & Betts "in care of Sammy Germany who represented that the monies would be deposited into an escrow account maintained by Sunjoy Power[.]"  (Dkt. 10, ¶ 25.)  The fact Plaintiffs tendered payment directly to Mr. Germany, to be held in escrow by a company other than Thomas & Betts, for services for which there is no indication Thomas & Betts provided, actually undermines Plaintiffs' agency theory.

Plaintiffs next contend Mr. Germany had actual authority because Thomas & Betts permitted Mr. Germany and Mr. Vigos to travel to Boise to meet and discuss Defendant's duties in relation to the Solar Project. (Dkt. 14, p. 14.)  That Thomas & Betts allowed two of its employees to travel to Boise to meet with Interconnect Solar does not establish that Mr. Germany had authority to bind Thomas & Betts to

a construction management contract. Thomas & Betts manufactures electrical connectors. Thomas & Betts could send Mr. Germany and Mr. Vigos, a "Product Specialist," to Boise to discuss providing electrical connectors to Interconnect Solar without any knowledge of the construction management contract. Notably, neither Mr. Germany nor Mr. Vigos's titles mention construction oversight. As Thomas & Betts emphasizes, Plaintiffs do not explain how individuals holding titles which do not mention construction oversight, who work for a company that does not provide construction oversight, were somehow empowered to bind Thomas & Betts to a construction oversight contract. (Dkt. 15, p. 7.)

Plaintiffs also suggest Thomas & Betts ratified Mr. Germany's authority because, after the aforementioned meeting in Boise, Mr. Vigos sent an email through his account with Thomas & Betts thanking Mr. Piske of Interconnect Solar for the opportunity and to meet him and Mr. Germany to discuss the Solar Project. (Dkt. 14, p. 14.) Defendant's "top level executives" were copied on the email. (*Id*.) The entirety of Mr. Vigos's e-mail states:

> Thanks again for the opportunity to meet with you and Sammy in Boise to discuss the project you are building over in Idaho. Per our discussion of the applications I have reviewed the drawings and put together a suggested list of material for you and Sammy to review.
> I selected components for the ground grid & ground ring in compression and mechanical, flexible braid (check sizing), lay in and compression lugs, PMA Conduit and mounting clamps. I used the U L Listed conduit that was the most recommended by PMA for solar applications.
> I would suggest a meeting with Holly Lane our Agency Sales Rep in Boise, and your Wesco Sales Rep to review pricing and availability of these items,

some may be 3-4 weeks out, so please consider that in your planning process.
I also have a 14-Ton battery crimp tool that you can borrow for the EZ-Ground compression, and Color-Keyed lugs, you will just need to purchase the associated Dies needed for the connectors.
Please let me know if I may be of further assistance, and thank you again for this opportunity.

(Dkt. 19.)[5]

Like his visit to Boise, Mr. Vigos's email is consistent with Thomas & Betts providing electrical connectors to Interconnect Solar in connection with the Solar Project. The e-mail contains no discussion of construction oversight services. Defendant's "top level executives" cannot be said to have ratified a construction management agreement by receiving Mr. Vigos's email when the email makes no mention of such an agreement.

While none of the facts Plaintiffs identify plausibly suggest Mr. Germany had actual or apparent authority to bind Thomas & Betts to the construction management contract at issue, perhaps the most glaring deficiency in Plaintiffs' Amended Complaint is the facts it omits. For instance, Plaintiffs claim Interconnect Solar "contacted Defendant Thomas & Betts Corporation seeking comment and feedback on the viability of the Construction Agreement, general

---

[5] Plaintiffs reference the aforementioned e-mail in their Amended Complaint but did not attach it. (Dkt. 10, ¶ 38.) Defendant submitted a copy of the e-mail with its Reply. (Dkt. 19.) The Court may consider the e-mail in deciding the Motion to Dismiss (without converting the Motion to Dismiss into a Motion for Summary Judgment) since the e-mail is referenced in the Complaint. *See supra,* text accompanying note 2.

contract oversight and project management, and engineer procurement, with respect to the solar power project at issue." (Dkt. 10, ¶ 15.) Plaintiffs do not specify why they contacted Thomas & Betts to provide such services, and fail to provide any detail regarding how they discovered or came into contact with the company. Plaintiffs also state, "[i]n contacting Defendant Thomas & Betts Corporation, Plaintiff Interconnect Solar primarily communicated with and dealt its management level employee and agent Sammy Germany." (*Id.*, ¶ 16.) Plaintiffs do not explain how they came into contact with Mr. Germany or why he was their primary and, with the exception of Mr. Vigos, apparent only contact with Thomas & Betts. Did Plaintiffs contact Thomas & Betts, request construction management services, and receive Mr. Germany's contact information as a result? Did Plaintiffs learn from others or from their own research that Thomas & Betts provided construction management services? If so, Plaintiffs claim of agency may have more weight. The Amended Complaint is strangely silent regarding the genesis of Plaintiffs' contact with, and relationship to, both Thomas & Betts and Mr. Germany.

Finally, while the Court must accept Plaintiffs' factual allegations as true, and must find Mr. Germany agreed to provide construction management services and implied he had the authority to offer such services on behalf of Thomas & Betts, apparent authority cannot be created by the acts and statements of the agent

alone. *Idaho Title Co. v. Am. States Ins. Co.*, 531 P.2d 227, 230 (Idaho 1975). As discussed, Plaintiffs have not identified any acts or statements on behalf of Thomas & Betts which suggest Mr. Germany had authority to bind it to a construction management contract. Further, the third party seeking to bind a principle must use reasonable diligence to ascertain the agent's authority, and "[r]easonable diligence encompasses a duty to inquire with the principal about the agent's authority." *Podolan v. Idaho Legal Aid Servs., Inc.*, 854 P.2d 280, 287 (Idaho Ct. App. 1993) (citation omitted). "If no inquiry is made, the third party is chargeable with knowing what kind of authority the agent actually had, if any, 'and the fault cannot be thrown on the principal who never authorized the act or contract.'" *Id.* (citation omitted). Plaintiffs do not allege any facts to show that they used reasonable diligence to ascertain Mr. Germany's alleged authority to act for Thomas & Betts.

In light of the significant omissions in the Amended Complaint and failure to plausibly establish Mr. Germany had actual or apparent authority to bind Thomas & Betts to the construction management contract, the Court must dismiss Plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims. Plaintiffs fail to plausibly allege either the existence of a contract between Plaintiffs and Thomas & Betts, or that Mr. Germany had either express, apparent or implied authority when he agreed to provide construction management services on behalf of Thomas & Betts.

## B. Negligence Claims

Plaintiffs bring three negligence-based claims against Thomas & Betts. Plaintiffs first allege Thomas & Betts negligently breached its duty to exercise reasonable care and control over the administration of the agreements entered into by and between the parties. (Dkt. 10, ¶¶ 51-54.) The elements of a negligence claim are: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage. *Johnson v. McPhee*, 210 P. 3d 563, 574 (Idaho Ct. App. 2009) (citing *Brooks v. Logan*, 903 P.2d 73, 78 (Idaho 1995)).

Thomas & Betts argues Plaintiffs' negligence claim must be dismissed because Plaintiffs have not plausibly alleged the existence of a relationship giving rise to a duty by Thomas & Betts. "Whether a duty exists is a question of law." *Beers v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 316 P.3d 92, 97 (Idaho 2013). Plaintiffs' sole support for the duty allegedly owed by Thomas & Betts to Plaintiffs is the construction management contract between Mr. Germany and Plaintiffs. Because Plaintiffs have failed to plausibly allege either that there was a contract between Thomas & Betts and Plaintiffs, or that Mr. Germany had the authority to bind Thomas & Betts to construction management contract he agreed to, Plaintiffs fail to state an essential element of their negligence

claim. Claim Two of the Amended Complaint fails to adequately allege Thomas &
Betts had a duty to Plaintiffs and is therefore dismissed.

The third claim of the Amended Complaint alleges Breach of an Assumed
Duty. "Even when an affirmative duty generally is not present, a legal duty may
arise if one voluntarily undertakes to perform an act, having no prior duty to do
so." *Id*. at 100 (quoting *Baccus v. Ameripride Servs., Inc*., 179 P.3d 309, 313
(Idaho 2008)). However, liability for an assumed duty can only "come into being
to the extent that there is in fact an undertaking." *Id*. (quoting *Udy v. Custer
Cnty*., 34 P.3d 1069, 1072 (Idaho 2001)).

Plaintiffs suggest Thomas & Betts voluntarily undertook the duty to procure
engineering services for, and to provide contractual oversight of, the Solar Project.
Plaintiffs cite the following facts to establish Thomas & Betts assumed such duty:

- Thomas & Betts through its authorized agent undertook to procure
  engineering services by retaining Eric Hepburn, P.E., for the purpose
  of completing the necessary engineering plans and drawings for the
  solar power project;

- Thomas & Betts through its authorized agent undertook to secure a
  Confidentiality Agreement relating to the project in question;

- Based upon Thomas & Betts' authorized manager's review advice and recommendation, Plaintiff Interconnect Solar purchased four (4) 100 kilowatt Micro Power System Inverters from Dynapower Company;

- Based upon Thomas & Betts' authorized manager's review, advice and recommendation, Plaintiff Interconnect Solar purchased equipment and other products for the solar power project in question from [Wesco].

(Dkt. 14, p. 17.)

Each of the aforementioned allegations involve the undertaking of Mr. Germany. The Amended Complaint does not allege Thomas & Betts was involved in the construction management contract, assigned it to Mr. Germany, instructed Mr. Germany to perform, or allowed Mr. Germany—or any other employee—to enter the contract on its behalf. Because Plaintiffs have not established Mr. Germany had the authority to take the aforementioned actions on behalf of Thomas & Betts, Plaintiffs' breach of an assumed duty claim must be dismissed.

Finally, Plaintiffs allege Thomas & Betts negligently breached its duty to properly hire, train and supervise its employee Sammy Germany. (Dkt. 10, ¶¶ 60-63.) Although Idaho has never explicitly recited the elements of a claim for negligent hiring or supervision, the Idaho Supreme Court implicitly recognized such claim was viable in *Cook v. Skyline Corp.*, 13 P.3d 857, 865 (Idaho 2000).

Neighboring jurisdictions have held an employer may be liable for harm caused by an incompetent or unfit employee if (1) the employer knew, or in the exercise of ordinary care, should have known of the employee's unfitness before the occurrence; and (2) retaining the employee was a proximate cause of the plaintiff's injury. *See, e.g., Betty Y. v. Al-Hellou*, 988 P.2d 1031, 1033 (Wash. Ct. App. 1999); *Crisman v. Pierce Cnty. Fire Protection Dist. No. 21*, 60 P.3d 652, 654 (Wash. Ct. App. 2002). In addition, an employer's duty is limited to only foreseeable victims. *Betty Y.*, 988 P.2d at 1033.

Here, there are no allegations that Thomas & Betts was engaged in the business of providing construction management services, that Mr. Germany was hired to provide such services on behalf of Thomas & Betts, that Thomas & Betts had reason to know Mr. Germany was not qualified to provide construction oversight, that Thomas & Betts knew or had reason to know that Mr. Germany was considering or ever agreed to provide construction management services for Plaintiffs, that Thomas & Betts had any knowledge that Mr. Germany accepted $50,000 from Plaintiffs for construction oversight and management, or that Thomas & Betts should have reasonably foreseen that Mr. Germany would try to generate income by providing construction management services. In the absence of such allegations, Plaintiffs fail to state a claim for negligent hiring and supervision.

Plaintiffs suggest Mr. Germany's actions in relation to the Solar Project were foreseeable to Thomas & Betts because Mr. Vigos copied Thomas & Betts' high-level employees when he sent Interconnect Solar the email thanking them for the meeting in Boise. However, as previously discussed, the email in question contained no mention of construction management services and no indication that Mr. Germany had agreed to provide such services on Defendant's behalf.

Plaintiffs also suggest "employees at Wesco and Dynapower had knowledge of the project in question and knowledge of Thomas & Betts' involvement therein." (Dkt. 14, p. 18.) Plaintiffs do not identify the employees at Wesco or Dynapower who purportedly had such knowledge, do not provide any detail regarding the specific knowledge such employees allegedly had, and do not submit any declarations or other evidence in support of this claim. As such, Plaintiffs' negligent supervision claim fails to meet the threshold of a plausible claim and must be dismissed.

### C. Idaho Code § 6-1607(2)

Thomas & Betts also seeks dismissal of Plaintiffs' negligence claims under Idaho law. Specifically, Idaho Code § 6-1607(2) codifies the common law on respondeat superior as follows:

> There shall be a presumption that an employer is not liable in tort based upon an employer/employee relationship for any act or omission of a current employee unless the employee was wholly or partially engaged in the employer's business, was on the employer's premises when the allegedly

tortious act or omission of the employee occurred, or was otherwise under the direction or control of the employer when the act or omission occurred.

I.C. § 6-1607(2).

Plaintiffs respond Idaho Code § 6-1607(2) "clearly does not immunize an employer from the negligent acts of a current employee when the employee was wholly or partially engaged in the employer's business, and reasonably appeared to be engaged in the employer's business or was otherwise under the direction or control of the employer when the act or omission occurred."  (Dkt. 14, pp. 17-18.) As discussed, Plaintiffs have not plausibly alleged Mr. Germany was wholly or partially engaged in Thomas & Betts' business when he agreed to provide construction management services for Plaintiffs.  Thomas & Betts does not provide such services and Plaintiffs have not offered any facts (other than an e-mail which did not mention construction management) to suggest Thomas & Betts knew Mr. Germany had agreed to provide construction management.  Further, as outlined in Section III.A, *supra*, Plaintiffs have not adequately alleged Mr. Germany was under the direction or control of Thomas & Betts when he provided negligent construction management services. As currently alleged, Plaintiffs' negligence claims must be dismissed under Idaho Code § 6-1607(2).

### D.  Economic Loss Doctrine

Thomas & Betts also seeks dismissal of Plaintiffs' negligence claims under the economic loss rule.  Generally, the economic loss rule holds that "a plaintiff

may not recover in tort where the sole allegation is that the defendant prevented the plaintiff from gaining a purely economic advantage." *Aardema v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 510 (Idaho 2009). Because Plaintiffs do not dispute their damages are purely economic, the economic loss rule applies to this case.

Plaintiffs claim the economic loss doctrine does not bar its negligence claims because it was in a "special relationship" with Thomas & Betts. (Dkt. 14, p. 19.) "The special relationship exception to the general rule of non-recovery applies to 'an extremely limited group of cases' 'where the relationship between the parties is such that it would be equitable to impose a duty on a defendant to protect against another's economic interest.'" *JH Kelly, LLC v. Tianwei New Energy Holdings Co., Ltd.*, 68 F.Supp.3d 1194, 1201 (D. Idaho 2014) (quoting *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1201 (Idaho 1995)). The Idaho Supreme Court has found the existence of a special relationship in two situations. "One situation is where a professional or quasi-professional performs personal services." *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1001 (Idaho 2005). "The other situation involving a special relationship is where an entity holds itself out to the public as having expertise regarding a specialized function, and by so doing, knowingly induces reliance on its performance of that function." *Id.*

Plaintiffs do not identify which special relationship exception applies in this case, and fail to set forth facts to support either form of special relationship.

Plaintiffs instead suggest, "[a]t this early stage in the proceedings, one or both exceptions to the economic loss rule" applies. (Dkt. 14, p. 19.) Because the allegations in the Amended Complaint do not justify imposing a duty of care on Thomas & Betts to protect Plaintiffs' economic interest in their contract with Mr. Germany, Plaintiffs' negligence claims must be dismissed.

## ORDER

NOW, THEREFORE, it is hereby ORDERED:

1. Defendant's Initial Motion to Dismiss (Dkt. 5) was rendered moot by Plaintiffs' Amended Complaint and is therefore **DENIED as MOOT**;

2. Defendant's subsequent Motion to Dismiss (Dkt. 11) is **GRANTED**:

3. Plaintiffs' Amended Complaint is Dismissed **without prejudice**[6];

4. If Plaintiffs wish to file an Amended Complaint they shall seek leave to do so within thirty (30) days of the date of this order, and shall submit a copy of the Second Amended Complaint with such filing. In the absence of such filing, or if the Court determines amendment should not be permitted upon reviewing the proposed Second Amended Complaint, judgment shall be entered for Defendant Thomas & Betts.

---

[6] A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc*., 573 F.3d 728, 737 (9th Cir. 2009). Because it is conceivable Plaintiffs could allege additional facts to cure the deficiencies identified above, the dismissal is without prejudice.

SO ORDERED.

DATED: January 19, 2017

Edward J. Lodge
United States District Judge